UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

PETER H. PRINCE,

    Plaintiff,

v.

ENTERGY NUCLEAR OPERATIONS, INC.,

    Defendant.

Case No. 5:11-cv-74

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANT'S MOTION TO DISMISS**
(Doc. 4)

    This diversity action arises out of the termination of Plaintiff Peter H. Prince's employment with Defendant Entergy Nuclear Operations, Inc. ("ENOI"). Before the court is Defendant's motion to dismiss Counts IV, V, and VI of the nine count Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). Following Plaintiff's submission of a "more definite statement" pursuant to Rule 12(e), the court took Defendant's motion under advisement on July 12, 2011. *See* Fed. R. Civ. P. 12(e). Plaintiff is represented by William M. McCarty, Jr., Esq. Defendant is represented by Pamela J. Coyne, Esq. and Timothy E. Copeland, Jr., Esq.

    For the reasons set forth below, Defendant's motion is granted in part and denied in part.

**I.    Factual Background.**

    The following facts, taken from Plaintiff's Amended Complaint and "more definite statement of facts," are assumed to be true for purposes of Defendant's motion to dismiss. Defendant is a centralized service company that provides nuclear management, operations, and maintenance services for non-utility nuclear plants, including Vermont Yankee. Plaintiff was employed by Defendant and its predecessor, Vermont Yankee

Nuclear Power Corp., for a total of twenty-three years until his termination on January 12, 2010. Plaintiff received several promotions throughout his career, and in 2007 he attained the position of "Senior Nuclear Support Coordinator/Operating Experience." (Doc. 16, Am. Compl. ¶ 4.) On October 9, 2007, Defendant informed Plaintiff that he could either accept a new position as "Senior RP/Chemistry Specialist/ALARA-VY," or resign from the company with no severance pay. *Id.* ¶ 5. Plaintiff accepted the new position, which he began on November 11, 2007. Defendant never provided Plaintiff with a job description for this position.

In his 2008 Performance Review, which Defendant provided to Plaintiff in March 2009, Plaintiff received an overall rating of "needs improvement." As a result, Defendant instituted a Performance Improvement Plan for Plaintiff in March 2009 that he was required to complete by June 1, 2009.

Plaintiff was diagnosed with obstructive sleep apnea in May 2009. On May 14, 2009, during a meeting with Emily A. Tinkham of Defendant's Human Resources Department, Plaintiff "requested reasonable accommodation and recognition for his . . . disability[.]" *Id.* ¶ 57. He then filed a Medication Reporting Form with Defendant on May 19, 2009, reporting his sleep apnea and listing all of his prescription medications. Defendant's Medical Review Officer reviewed the form and approved Plaintiff's medications. In an email to Plaintiff dated June 8, 2009, Ms. Tinkham stated that Plaintiff had "asked that we accommodate your difficulty sleeping by lowering the work performance standards of your job and the requirements set out in your 2009 Performance Improvement Plan. We do not believe that would serve the best interests of the Company and it's not otherwise appropriate." *Id.* ¶ 58. Plaintiff responded to this email in a letter dated June 22, 2009. In it, Plaintiff noted his sleep apnea, and wrote: "[o]n May 14, I did not ask Entergy to accommodate me by lowering the performance standards of my position. I believe that I can, and will, and do perform up to the performance standards. I only wanted a reasonable recognition of the disability under which I am working at this point in time. . . . I do believe that the overall attitude of my

immediate supervisors is overly aggressive and does not recognize my existing disability." *Id.* ¶ 59.

On June 26, 2009, Defendant determined that Plaintiff did not successfully complete the Performance Improvement Plan, and a second Performance Improvement Plan was written by a new ENOI manager. The second plan, which was to be completed by September 14, 2009, was "substantially different" from the first, and included more duties. During his approved vacation in August 2009, Plaintiff's supervisor completed an Interim Performance Management Report ("Interim PR&R") and "checked off" Plaintiff's acknowledgement of the same without actually obtaining Plaintiff's input or permitting his review. Contrary to Defendant's own rules and regulations, no meeting was ever held with Plaintiff to review the Interim PR&R.

In response, Plaintiff filed a letter with Defendant on September 3, 2009, stating that,

> no matter what I achieve, there is fault to be found with it . . . constant references to the speed at which I perform work remains a recurring theme and are exaggerated. As you are aware of my medications and medical condition, it appears to me that you may be indicating that I am too old to perform this job to your satisfaction. . . . You have been changing my workload and increasing it beyond the capacity of the ten-hour work day. You are aware that these things cannot be done in a ten-hour workday, or, if they 'can be done' they cannot be done adequately and professionally.

*Id.* ¶ 63. Subsequently, on September 16, 2009, Plaintiff met with Defendant's Assistant General Counsel regarding Plaintiff's complaints "about the inappropriate and discriminatory practices being utilized by his supervisors." *Id.* ¶ 23. On November 9, 2009, Defendant informed Plaintiff that an outside law firm had investigated Plaintiff's complaints, and had determined that they were not valid.

Plaintiff's two immediate supervisors informed him on September 14, 2009 that he had not successfully completed the second Performance Improvement Plan. On November 13, 2009, Defendant informed Plaintiff that it was revoking his security clearance at Vermont Yankee and placing him on administrative leave due to concerns about his health and well-being. Defendant did not provide further details or explanation

to Plaintiff for the revocation of his security clearance, however, Defendant's Medical Review Officer subsequently required Plaintiff to submit to a psychiatric evaluation as a prerequisite to reinstating Plaintiff's security clearance.

Defendant terminated Plaintiff's employment on January 12, 2010 for the stated reason that Plaintiff did not successfully complete the second Performance Improvement Plan. When Defendant notified Plaintiff of his termination, it also advised Plaintiff that his security clearance for access to Nuclear Regulatory Commission licensed facilities was terminated "favorably" pursuant to the Personnel Access Data System ("PADS"). In actuality, Defendant had entered an unfavorable PADS rating on the same day as Plaintiff's termination, indicating that Plaintiff had "self-reported testing positive for use of drugs and alcohol and/or been determined to be impaired on, or during pre-employment testing." *Id.* ¶ 31.

Plaintiff began temporary employment at Nine Mile Nuclear Power Station in New York on March 1, 2010. On March 4, 2010, Plaintiff was notified that he had an unfavorable PADS rating and that he was therefore barred from the Nine Mile facility until he submitted to psychological testing and evaluation. Nine Mile unsuccessfully attempted to confirm with Defendant that the PADS rating was an error. In addition, on April 2, 2010, Defendant responded to inquiries from Plaintiff and Plaintiff's counsel by denying that an unfavorable PADS rating had been entered under Plaintiff's name. As a result, Plaintiff had to successfully complete a psychological evaluation before he was cleared for employment at Nine Mile. Nine Mile later confirmed that it had contacted Defendant on April 14, 2010, at which point Defendant had corrected the erroneous PADS entry.

In his nine-count Amended Complaint against Defendant, Plaintiff alleges breach of contract, breach of the implied covenant of good faith and fair dealing, libel, tortious interference with a prospective contractual relationship, intentional infliction of emotional distress, loss of consortium, and violations of the Vermont Fair Employment Practices Act ("FEPA"). *See* Doc. 16 ¶¶ 35-87. Defendant moves to dismiss Counts IV, V, and VI of the Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a

claim. Counts IV and V allege unlawful retaliation under the FEPA, and Count VI alleges tortious interference with prospective contractual relations.

## II.   Procedural Background.

The court heard oral argument on Defendant's motion on June 28, 2011. In the Amended Complaint, Plaintiff alleged that he was retaliated against for submitting written complaints to Defendant, but did not provide specific factual allegations as to the substance of those complaints. Accordingly, at the conclusion of argument, the court ruled *sua sponte* that Plaintiff's allegations of unlawful retaliation were not sufficiently specific with regard to whether he had engaged in "protected activity" under FEPA, and ordered Plaintiff to submit a "more definite statement" pursuant to Rule 12(e). *See* Fed. R. Civ. P. 12(e); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1275 (11th Cir. 2006) ("district courts [have a] supervisory obligation to *sua sponte* order repleading pursuant to [Rule] 12(e) when a shotgun complaint fails to link adequately a cause of action to its factual predicates"). On July 11, 2011, Plaintiff filed a "more definite statement" through an amended complaint that consolidates Counts IV and V into a single count, and includes allegations regarding the substance of the written complaints that he had filed with Defendant prior to his termination. (Doc. 17.)

## III.   Standard of Review.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). In *Iqbal*, the Supreme Court set forth a "two-pronged" approach for analyzing a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. First, a court must accept a plaintiff's factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. *Id.* at 1949-50. However, this assumption of truth does not apply to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. Second, a court must determine whether the complaint's "well-pleaded factual allegations . . . plausibly

5

give rise to an entitlement to relief." *Id.* at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### IV. Conclusions of Law and Analysis.

Both Counts IV and V allege violations of FEPA. Defendant argues that each fails to state a claim because they fault Defendant for engaging in conduct that is not proscribed by FEPA. Defendant argues that Count VI, which alleges tortious interference with a prospective contractual relationship, does not state a claim because Plaintiff does not allege interference with an existing business relationship, and because he fails to allege that Defendant engaged in any intentional conduct that interfered with a business relationship.

#### A. Count IV: Retaliation in Violation of FEPA

In Count IV, Plaintiff alleges that Defendant terminated his employment in retaliation for his "disclosing a qualified disability and requesting accommodation from Defendant."[1] (Doc. 16 ¶ 57.) Plaintiff further alleges that "disclosing a qualified disability" and "requesting accommodation" from one's employer are "protected activities," and therefore terminating employment in retaliation for engaging in such activities violates FEPA. *See* 21 V.S.A. § 495(a)(5). In his more definite statement, however, Plaintiff consolidated Counts IV and V, and no longer alleges retaliation based upon the disclosure of his disability, or his request for reasonable accommodation. *See* Doc. 17 at 1 n.1, ¶¶ 72-75. Accordingly, Defendant's motion to dismiss Count IV is DENIED as moot.

---

[1] In his more definite statement, Plaintiff consolidated Counts IV and V into a single "Count IV." Nonetheless, the court refers to Counts IV, V, and VI as set forth in the Amended Complaint for purposes of ruling on Defendant's motion to dismiss. Defendant's motion remains pending before the court, and it has not been amended following the submission of Plaintiff's more definite statement. In addition, Plaintiff's more definite statement supplements the factual allegations supporting his original Count V, and omits the cause of action alleged in his original Count IV. *See* Part IV.A.

### B. Count V: Retaliation in Violation of FEPA

In Count V, Plaintiff alleges that Defendant violated FEPA when it "retaliated against Plaintiff for filing complaints critical of his supervisor's improper actions regarding the Performance Improvement Plans and the Interim PR&R." (Doc. 16 ¶ 62.) The "improper actions" Plaintiff alleges are that (1) his supervisors had an "overly aggressive" attitude with regard to completion of his first Performance Improvement Plan; (2) "Plaintiff was provided with . . . a second [Performance Improvement Plan] which was substantially different than the first Plan and included more duties"; and (3) "Plaintiff's supervisor completed Plaintiff's [Interim PR&R] and 'checked off' Plaintiff's acknowledgement of the same without Plaintiff's input or review, contrary to Defendant's rules and regulations." *Id.* ¶¶ 17-20, Doc. 17 ¶ 59. Plaintiff complained about these actions in letters dated June 22, September 3, and September 9, 2009. Defendant argues that Count V must be dismissed because Plaintiff does not allege that he was retaliated against for engaging in a "protected activity."

FEPA makes it unlawful for "any employer . . . to discriminate against any individual because of race, color, religion, ancestry, national origin, sex, sexual orientation, gender identity, place of birth, or age or against a qualified disabled individual." 21 V.S.A. § 945(a)(1). FEPA also proscribes retaliation against those who complain of such discrimination, providing that it "shall be unlawful employment practice" to

> discharge or in any other manner discriminate against any employee because such employee has lodged a complaint of discriminatory acts or practices or has cooperated with the attorney general or a state's attorney in an investigation of such practices, or is about to lodge a complaint or cooperate in an investigation, or because such employer believes that such employee may lodge a complaint or cooperate with the attorney general or state's attorney in an investigation of discriminatory acts or practices;

21 V.S.A. § 495(a)(5). To succeed on a retaliation claim, a plaintiff must show that he was engaged in a "protected activity" as defined in the statute, that his "employer was aware of that activity," and that there was "a causal connection between the protected

7

activity and [some] adverse employment action." *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 42, 176 Vt. 356, 848 A.2d 310.

As Defendant observes, FEPA does not protect complaints that a Performance Improvement Plan is unfair because it is too burdensome, and that an Interim Performance Management Report is illegitimate because the employee did not review it. Such complaints, without more, do not allege discrimination of any sort, and therefore are not among the "protected activities" listed in § 495(a)(5).

In his "more definite statement," however, Plaintiff alleges that he complained to Defendant that his supervisors engaged in this allegedly improper conduct because of his age and medical condition. First, in his June 22, 2009 letter, Plaintiff complained that his immediate supervisors displayed an "overly aggressive attitude" as to his first Performance Improvement Plan, thereby failing to properly "recognize [his] existing disability." (Doc. 17 ¶ 59.) Then, in his letter dated September 3, Plaintiff suggested that his supervisors' unfair criticisms and unrealistic performance expectations were motivated by their knowledge of Plaintiff's "medications and medical condition," and their belief that Plaintiff was "too old to perform th[e] job to [their] satisfaction." (Doc. 17 ¶ 63.) Because Plaintiff alleges that he complained of discriminatory conduct based upon his disability and age—two forms of discrimination expressly prohibited by FEPA—he sufficiently alleges protected activities of which Defendant was aware. *See Beckmann v. Edson Hill Manor, Inc.*, 171 Vt. 607, 608, 764 A.2d 1220, 1223 (2000) (reporting alleged sexual harassment to supervisor was a protected activity that "satisfie[d] both the first and second elements" of a FEPA retaliation claim: that plaintiff engaged in a protected activity and that the defendant was aware of that activity).

In addition, Plaintiff has sufficiently alleged the third element of a retaliation claim by alleging that he suffered adverse employment actions as a result of his complaints. Specifically, Plaintiff alleges that Defendant denied him adequate time to complete either of his Performance Improvement Plans, summarily revoked his security clearance, subjected him to "needless and demeaning" psychological testing, and

8

ultimately terminated his employment.[2] (Doc. 16 ¶¶ 74-75.) *See Robertson*, 2004 VT 15, ¶ 47, 176 Vt. at 378, 848 A.2d at 329 ("Plaintiff's termination is clearly an adverse employment action"). Accordingly, Plaintiff's retaliation claim cannot be dismissed as a matter of law, and Defendant's motion to dismiss Count V is DENIED.

### C.   Count VI: Tortious Interference with a Prospective Contractual Relationship

Count VI alleges that Defendant tortiously interfered with Plaintiff's prospective contractual relationship in two separate ways. First, Plaintiff alleges that Defendant wrongfully gave Plaintiff an unfavorable PADS rating that "rendered Plaintiff unemployable at any nuclear power plant in the United States, as it denied him unescorted access to those facilities." (Doc. 16 ¶ 64.) Second, Plaintiff alleges that "Defendant failed and refused to correct the unfavorable PADS rating when requested by Plaintiff," *id.* ¶ 65, thereby requiring Plaintiff "to needlessly take psychological diagnostic testing and be evaluated by a psychologist before being cleared for continued employment at Nine Mile Station," *id.* ¶ 66. Defendant argues that these allegations fail to state a claim because (1) Plaintiff must allege an existing business relationship with which Defendant interfered, and cannot rely on allegations that he became generally "unemployable"; and (2) Defendant cannot be liable because it ultimately corrected the erroneous PADS entry when contacted by Nine Mile.

Under Vermont law, the elements of tortious interference with a prospective contractual relationship are (1) the existence of a valid business relationship or expectancy; (2) knowledge by the defendant of the relationship or expectancy; (3) an intentional act of interference on the part of the defendant; (4) that the defendant interfered either with the sole purpose of harming the plaintiff or by means that are dishonest, unfair, or improper; (5) damage to the party whose relationship or expectancy

---

[2] As to any "improper actions regarding the . . . Interim PR&R," Plaintiff allegedly complained to Defendant that his supervisors acted "with the intent to cause [him] harm by using this forged document as a means to cause [his] termination or other detrimental act." (Doc. 17 ¶ 64.) Because this grievance contains no accusation of unlawful discrimination, it is not a "protected activity," and cannot serve as a predicate to a retaliation claim under FEPA.

was disrupted; and (6) proof that the interference caused the harm sustained. *See Gifford v. Sun Data, Inc.*, 165 Vt. 611, 613 n.2, 686 A.2d 472 (1996).[3]

Plaintiff's first allegation—that Defendant is liable because it intentionally rendered Plaintiff "unemployable at any nuclear power plant in the United States"—fails to state a claim because Plaintiff does not allege "business relations existing between [himself] and a third party." Although a defendant may be liable for tortiously interfering with business relations not yet formalized by contract, general allegations of reduced employment opportunities, or speculation about potential future business partners, will not suffice. Instead, "there must exist a reasonable probability that a business or contractual relationship would have arisen but for the conduct of the defendant[.]" *J.A. Morrissey, Inc. v. Smejkal*, 2010 VT 66, ¶ 22, 6 A.3d 701, 709. Plaintiff identifies no such relationship, and a claim that no power plant would hire him fails to state a claim as a matter law. *See DiFolco v. MSNBC Cable, LLC*, 622 F.3d 104, 114-15 (2d Cir. 2010) (dismissing interference with a prospective contractual relationship claim because the plaintiff alleged only that the defendant hindered his ability to acquire future employment in the "[news and entertainment] industry," and "fail[ed] entirely to describe any third party with whom [the plaintiff] had prospective business relations to be interfered with[.]"); *Gifford*, 165 Vt. at 613, 686 A.2d at 475 (granting judgment notwithstanding the verdict on claim of interference with prospective contractual relations because "[t]he relationship [the plaintiff] describes" with potential customers "is too speculative to constitute an 'existing business relation.'").

Plaintiff has stated a plausible claim, however, that Defendant tortiously interfered with Plaintiff's business relationship with Nine Mile by initially refusing to correct the erroneous PADS rating when Plaintiff and Nine Mile brought it to Defendant's attention. Defendant seeks dismissal of this claim because Defendant ultimately communicated with Nine Mile and changed Plaintiff's PADS rating. *See* Doc. 4 at 8-9. Such correction,

---

[3] The tort of interference with a prospective contractual relationship "protects the same interest in stable economic relationships as does the tort of interference with contract, but applies to business relationships not formally reduced to contract." *Gifford*, 165 Vt. at 613, 686 A.2d at 474 (citing *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 590 (Cal. 1990)).

however, does not address Plaintiff's further claim that he was harmed between the time that he first discovered the unfavorable PADS rating on March 4, 2010, and the time that Defendant corrected the error on April 14, 2010. Specifically, Plaintiff alleges that Defendant's initial denial of its error harmed Plaintiff by delaying his employment at Nine Mile, and forcing him to undergo otherwise unnecessary psychological evaluation. Thus, Plaintiff specifically alleges that he had an existing business relationship with Nine Mile, that Defendant had knowledge of this relationship, and that Defendant engaged in intentional conduct that interfered with this relationship. Moreover, it is reasonable to infer that Defendant acted unfairly and with the sole purpose of harming Plaintiff, thereby satisfying the subjective intent requirement of the tort.

For these reasons, Defendant's motion to dismiss Count VI is GRANTED in part and DENIED in part. Plaintiff's claim based upon Defendant's alleged interference with Plaintiff's ability to obtain employment in the nuclear power industry is dismissed for failure to state a claim; however, Defendant's motion is denied as to Plaintiff's claim that Defendant interfered with Plaintiff's employment with Nine Mile.

V.      **Conclusion.**

For the reasons set forth above, Defendant's motion to dismiss (Doc. 4) is GRANTED as to part of Count VI and DENIED in all other respects.
SO ORDERED.

Dated at Rutland, in the District of Vermont, this 3rd day of August, 2011.

_____
Christina Reiss, Chief Judge
United States District Court